CUNNINGHAM, J.,
DISSENTING:
I respectfully dissent from the Majority’s opinion due to its application of KRE 404(b) and its finding of reversible error.
The Majority’s opinion today demonstrates an incorrect and inconsistent use of the KRE 404(b) exclusion. The crux of any 404(b) analysis centers on the proffered evidence’s objective. See, e.g, Davis v. Commonwealth, 147 S.W.3d 709, 723 (Ky. 2004). In other words, what purpose is the evidence being used for? In regards to the Facebook messages which occurred subsequent to Ms. Farris’ death, the Commonwealth made clear that-it was offering the evidence to challenge Rucker’s credibility. Such an objective, as- will- be discussed, may be questionable. Even so, the Commonwealth provided a reasonable argument that it was attempting to rebut the defense’s opening statements portraying Rucker as a terrified and unknowing discoverer of Farris’ body. Accordingly, I find it perplexing that the Majority utilizes KRE 404(b), as opposed to the other applicable Rules of Evidence, to find error.
As the Majority has already detailed, KRE 404(b) prohibits the introduction of “[e]vidence of other crimes, wrongs, or acts” used “to prove the character of a person in order to show action in conformity therewith.” The Majority’s analysis fails to find the existence of the rule’s second requirement for exclusion—that Rucker’s Facebook messages were offered to show action in conformity therewith. Instead, the Majority merely concludes that the introduction of Rucker’s Facebook messages violated KRE 404(b) because it showed that “he is a contemptible person of low character.” For many reasons, this is not the standard by which we invoke the 404(b) exclusion. Indeed, if the Court excluded all prior bad acts simply because they revealed the defendant’s shameful character, we- would have no need for the evidentiary rule. Such an analysis is more appropriate for the inevitable KRE 403 balancing test.
For these reasons, the Court should utilize the correct analysis, which investigates whether the Commonwealth’s introduction of Rucker’s messages was an attempt to demonstrate that he. was any more or any less likely to kill Ms. Farris, In this regard, the Majority’s reasoning that Ruck-er’s appetite for sexual communications somehow demonstrates a criminal propen *575 sity for manslaughter is unsound. The Commonwealth’s motive in introducing the evidence was merely an attempt, however unnecessary, to impeach Rucker’s credibility and defense. Thusly, I do not believe Rucker’s Facebook messages fell within the purview of 404(b).
Nevertheless, I do agree that it was error for the trial court to admit Rucker’s Facebook messages pursuant to KRE 401, 402, and 403. First, Rucker’s Facebook messages had little, if any, relevancy to the case at bar. Whether Rucker was scared upon discovering Ms. Farris’ body is not a fact of consequence to the determination of the crimes charged. KRE 401. Moreover, the need to refute such a claim proves doubtful, as the statement that Rucker was “scared to death” was brief and occurred during opening statements. In addition, the evidence certainly induced prejudice as it demonstrated that Rucker was more preoccupied with satisfying his sexual desires than mourning the loss of his girlfriend.
Despite the error, I disagree with the Majority that the admission of Rucker’s Facebook messages rises to the level of reversible error. As explained below, the jury was informed of Rucker’s relentless infidelity preceding Ms. Farris’ death, The jury was also properly presented with evidence that he used Ms. Farris’ debit card to purchase a phone sex service. The prejudice Rucker endured from the introduction of his Facebook messages was likely negligible considering the amount of other evidence demonstrating his preoccupation with sexual communications. In light of the overwhelming evidence of Rucker’s guilt, including his admission to injuring Ms. Farris, the erroneously admitted messages likely had no effect on the jury’s ultimate determination. See RCr 9.24.
I also differ with the Majority’s conclusion that Rucker’s recorded sexually explicit phone messages were both irrelevant and unduly prejudicial. Rucker testified that Ms. Farris had provided him with a copy of her debit card and stated that she allowed him to use it prior to her death. Rucker was essentially claiming that Ms. Farris had consented to his use of her debit card. During cross-examination, the Commonwealth questioned Rucker about a specific charge on Ms. Farris’ debit card which was incurred from the use of a 1-800 number. Rucker acted clueless, claiming that he used her debit card for “some things I paid off, certain fees to social sites, personal sites, adult sites. I was paying off the fees for some of those. I believe that is probably included in one of those.” In response, the Commonwealth introduced the recordings to show that the charges actually arose from a paid subscription to a service whereby Rucker sent and received sexual voice messages with other women.
This Court has explained that “[a] ‘fact that is of consequence to the determination of the action’ includes not only a fact tending to prove an element of the offense, but also a fact tending to disprove a defense.” Dunlap v. Commonwealth, 435 S.W.3d 537, 592 (Ky. 2013). In this respect, the evidence was probative in that it demonstrated to the jury that Rucker was not innocently paying off internet fees that the couple may have previously incurred together, or that Ms. Farris would have consented to, but that he was really using the deceased’s money to engage in phone sex. I believe the trial court properly exercised its wide-ranging discretion in determining that the recordings could be used to impeach Rucker. Even assuming that the recordings were admitted in error, they certainly do not necessitate a new jury trial. Any likely harm was minimal considering the overwhelming' proof of Rucker’s guilt, the jury’s knowledge of his *576 use of the “adult site,” and the fact that the jury, just ten minutes prior, viewed highly sexual Facebook messages Rucker sent to numerous women just before Ms. Farris’ death.
For the aforementioned reasons, I would affirm the Fayette Circuit’s judgment and sentence.
Keller and VanMeter, JJ., join.